Please be seated. This is PayCargo v. CargoSprint. And Noah Rashkind is here for the appellants, CargoSprint, and Joshua Wolfe. And Matthew Wineshaw is here for the appellee, PayCargo. And Mr. Rashkind, you may begin. Your Honor, and may it please the Court, I represent CargoSprint, LLC and Joshua Wolfe. This appeal stems from a trademark dispute between PayCargo, LLC and CargoSprint, LLC, formerly known as PayAirCargo, over the use of the name PayAirCargo, where both companies offer to pay cargo fees. The District Court erred at three critical stages in the proceedings below. First, the District Court erred when it granted summary judgment in favor of PayCargo, when there was significant and powerful evidence that the PayCargo marks are generic. Second, when PayCargo lacked ownership, there was evidence that PayCargo lacked ownership and therefore standing as to, in light of invalid assignments of the PayCargo marks from an entity called Coheway to PayCargo. And then, for a third mark, from a Florida PayCargo entity to a Delaware PayCargo entity. Appellee is a Delaware entity. Didn't CargoSprint abandon the distinctiveness argument by end of the settlement agreement in the first place? It did not abandon. Pretty much an acknowledgment, isn't it? The settlement agreement itself, that the term is distinctive? That would be if the settlement agreement was entered into knowingly and without knowledge or under the circumstances, because there was no ownership, PayCargo knew that there was no ownership. But didn't you, but you entered into a settlement agreement. I mean, for me, and I speak for myself only, I have an issue because I view this case as really almost an enforcement of a settlement agreement at this point. Yes, Your Honor. In any event, a mark can be considered generic at any time and can be found to be invalid at any time if it is, if it was obtained by fraud. And so I think that, I don't think that that, that the settlement agreement, this is not a case where there is an attempt by CargoSprint to go back to the old name. CargoSprint has changed its name. It has been known by CargoSprint for a long time. There is a permanent injunction in place that would not be affected by reversal on these counts that was as a result of the breach of contract claim, which is not an issue in this case. I don't understand the fraud argument, the fraud, that the mark was obtained by fraud from the United States Patent and Trademark Office? Yes. As to that issue, there were applications filed when, prior to the marks being used in commerce. And the statement in the application was that the marks were in use in commerce. That could have been considered an inadvertent mistake by a layperson. But there were additional knowingly false statements made in response to an office action that was covered in the brief. What was the false representation? The false representation was, again, that the marks were in use in commerce. They needed to provide additional specimens with an additional declaration that the marks were in use in commerce. Didn't they have witnesses who testified that the first mark was used in 2003 in presentations to potential investors and customers? Yes, but that was not use in commerce. That qualifies, that does not qualify as use in commerce. And it was established that the first use in commerce did not occur until 2009. District Court found that, as to this issue, that in addition to the requirement that there be a false material statement, that there has to be sort of an intent to deceive, there has to be sort of a state of mind requirement to reach the element of fraud. That's the difference between sort of false statement and fraudulent statement. And our case law seems to support that. Our sovereign case, which adopted the Bose standard, seems to support that. And the District Court relied on Bose, which distinguished between mistakes of law like this versus outright fraudulent statements. And what Bose held, or what Bose said, is where there is undisputed evidence, or where what in commerce meant, what the law was, that that is not fraudulent intent. And here, as I read it, there was evidence submitted by the other side to say, yes, we got this wrong, we understood in commerce to mean something else, we made a mistake of law here. I don't see that evidence being disputed. It is because there was the additional statement, which should be viewed as an admission, that the reason why they made the statement as to the office action was they were doing everything, I believe the quote is, they were doing everything to get this passed. That's not inconsistent with, you're right, I mean, that's in the record, but that's not inconsistent with, we understood this to be the X, and we're trying to get this done as quickly as possible. Those are not inconsistent in any way. I don't see how that disputes, that sort of is a head-on, genuine issue of material fact that would create a jury question on that. Can you help me with that? Not anything more than I've already said.  Thank you, Counselor. What I would also say is in addition to the fraud issue, which we've just covered, which was the third issue, the second issue, as to standing, in light of an invalid assignment via visa and attempt through a non-proton agreement, as well as an examiner's amendment, that So let's cover the first two marks. So the first two marks deal with the non-proton agreement. The last one deals with the LLC issue. So as to the first two marks, as I understand Florida law, it's that where a contract language, the operative contract language is clear, a recital that may be inconsistent with that does not overcome that clear and unambiguous operative language. Do I have Florida law wrong on that? I think you have it right, Your Honor. The problem is that this was, it was a non-proton. So it was not intended to create a new agreement. It was intended to codify something that had previously demonstrably not to have occurred. And that's where, that's where the issue of Well, I don't think anyone disputes at this point, and if they did, they'd be wrong, that in other words, you are right that the original agreement didn't do, make the assignment. I don't think anyone really disputes that. I think what the, what I understand the argument to be, and what I understand the district court to have determined here was there's no genuine dispute that the operative language here is unambiguous and unambiguously assigned. So even if the original agreement didn't do what it was supposed to do, this one does. And whatever recital is there, which seems to indicate or call back to the original agreement, can't overcome that, that clear and unambiguous language in the operative language of the non-proton agreement. Am I, do I have that wrong? I believe in the way you've recited it, that's correct. In fact, in assuming that a non-proton can create a new agreement and it, my argument Isn't it an agreement? I mean, it is a separate agreement. It just, it just calls back to the concept of non-proton is just that it happened. We're deeming it to have happened originally, not that it is part of the original agreement, is it? Correct. But this was not an amendment to the original agreement. Agreed. Yeah. But isn't that the point? Meaning it's a separate agreement. So as to that separate agreement, the operative language seems to be unambiguous and correct me if I'm wrong. I mean, if you think it is, tell me, but the operative part seems to say we're assigning all the goodwill and all the trademarks to this entity. And the, and the recital says maybe something different or intimate something different, but that can't overcome the unambiguous language under Florida law, right? I think that, I think that it, well, I disagree that it can't because, because of what a non-proton is and that it is essentially taking the place of something that previously occurred, but in this case did not, it demonstrably did not occur. And so had they prepared a new agreement that amended the prior or, or something of that nature that wasn't a non-proton, which can't change history, then we would be operating under a different set of facts. But in this case, that's not what happened. And, and, uh, to, to hold that a non-proton can change history, uh, I believe would be an error to do. Uh, and- What do we do with the language in the settlement agreement, which seems to indicate an admission by your client that this was validly held by the prior entity? Um, and, and this goes to some of the questions that Judge Lugo and Judge Wilson asked you. Yes, Your Honor. I think that, um, it becomes irrelevant if the court agrees that there was, um, evidence in the record, powerful and, and considerate, considerable evidence in the record that the marks are generic. Um, in which case it would, it would not matter, uh, because a, a generic mark is unprotectable. So let- What do, what do we do with our decision, though, in United States Patent and Trademark Office versus Booking.com, which rule that, uh, compound terms like we have here, pay in cargo, pay cargo- Yes, Your Honor. I think that would be examined not individually, but in their entirety. Yes, Your Honor. Excellent point. Um, the Booking.com case does say exactly that. Booking is a generic term. Dot com is a generic term. Bringing them together does not automatically make the term Booking.com generic. Nobody is asking for a Booking.com, so one might ask for a booking. Um, in this particular case, pay is, is a transitive verb. It requires, according to Webster's Dictionary, it requires something on which for it to act. In this case, it acts on, on the only other word in the mark, which is cargo. Um, and, uh, in other words, what- Isn't, isn't doing what you, what you're doing now, which is literally word for word what you did in the brief. Yes, Your Honor. Um, isn't that exactly what Justice Ginsburg told us not to do in the Booking.com case? In other words, you don't just look at these terms at, in aggregate or individually and then just sort of mash them up as the definition to say what it is. You actually have to look at the term itself as a defined term. And sometimes the term itself will have a definition as mashed up. And sometimes you'll need survey material to, so, to see is this generic or not to be able to understand it. So, the, the example that Justice Ginsburg uses is milk delivery, it's two separate words, versus barn milk, um, together. Um, here you have, we can't just look at it definitionally and then put the definitions together as you seem to do, but we have to look if pay cargo has an independent meaning itself, right? Correct. And we can do that, fortunately, because there's additional evidence beyond just the dictionary definitions as, as I'm sure you're well aware, because you read the briefs, uh, the patent registration that was submitted, um, does in fact include the type of evidence and language you're talking about because- So, I, I, I, and you do, you make, you make both those points, but if you look at, I think it's page 26 of the red brief, and, and all they do is just cite the patent language, there's a ton of things that these patents do. I mean, you're right, it includes, it pays for cargo, I mean, that, that is essentially what the product does. But it does so much more than that as, with regard to goods, methods, processes. For example, it says that it includes information management of financial records for the freight industry, customer service and dispute resolution, electronic processing, credit, credit loans, and e-software, all as part of the patent applications, right? That's correct, Your Honor. And as it pertains to, uh, the infringement in this case, it pertains to, amongst other things, the fact that both companies, what they do is pay for cargo, or pay cargo fees. But it does a lot more than that, in other words, that's not just what they do, if, if that term, if we're looking, as we're defining it by the application, seems to do much more than that. It may not be generic as to those other things, um, so that might be, that might, might, might be a separate question. And I, I, I see that I am, I'm out of time. I had additional issues I know the Court is aware of, um, but at this point, I will, um, uh, stand on the briefs. Thank you. All right. Thank you, Counsel. Mr. Weinshaw. May it please the Court, uh, Matthew Weinshaw of Potter's Dorset on behalf of Pay Cargo, the appellee. Uh, this Court should affirm the judgment below because there is no error in granting summary judgment on Lanham Act liability and no abuse of discretion in the Court's evidentiary and fee rulings. Um, I'd like to focus this morning on the genericism argument and the standing and fraud argument since that's, uh, what my friend addressed, uh, and rely on the briefs on all other issues unless the Court has specific questions. Um, I'll start with genericism. Um, as Judge Wilson articulated, Booking.com is the, uh, governing authority on genericism and, uh, Judge Luck, you had it right. The term itself, the combined term, has to be analyzed, not just the separate components. And each of the examples that, um, the other side points to in the patent documents does not have pay cargo, the combined term itself, used there. It's payment of cargo fees, payment for cargo shipments. Um, and the argument itself that pay cargo somehow is the term that, um, names a service, which is the standard that has to be met, is simply inaccurate because cargo is not paid, right? Cargo does not receive payment. The payment is actually for the fees for shipping cargo by rail, by air, by things like that. It's... I think if, if all you did was just pay cargo, in other words, if what you did was send someone to pick up a check and walked it over to the, to the port to pick up, to pay for the stuff, that, that, I have to say that would be a little close. But that's not, as I understand the patent applications and what y'all do, it's not that. It's actually kind of sophisticated of what this system is. Am I, do I have that wrong? You're, you're right, Your Honor, in terms of the, the things that we do. I think even under that, even if all we did was pay cargo fees, I think at most you could make an argument it would be descriptive, not, um, not generic because to, to meet that contest, you'd have to, as Justice Ginsburg said, you'd have to be able to say cargo sprint is a pay cargo or cargo. What is your favorite pay cargo? There's no evidence in the record that anyone, um, in the industry, the relevant public uses or understands the combined term pay cargo in that manner. And it's very important that this, um, this, this mark has, has been registered as incontestable because we're then starting from a position as this court has made clear and engineered tax services and Royal Palm where, um, where there's a presumption of, uh, of distinctiveness. And so it's on the other side to come forward and disprove that distinctiveness. They need to do that either with a survey or with use in literature. And there's just simply not an example anywhere of anyone in the relevant public using that combined term in that manner. But you're right, Your Honor, pages 26 to 27 lists the suite of services that pay cargo offers from dispute resolution to data management, to the settlement of financial transactions. And really all of it surrounds the release of cargo, um, uh, shipments from, from shippers. So, um, on, on genericism, there is no dispute of fact, um, that, that pay cargo is, um, at least suggestive at presumed to be subject, uh, suggestive and, and, and the presumption was not overcome. Um, it's also a burden of persuasion as this court made clear in, uh, engineered tax services. Um, on the assignment issue, um, and the fraud issue, um, Judge Wilson, you, I believe you may have authored the, uh, the sovereign military, uh, case and, uh, that does control the analysis here. There is no evidence that, uh, that there was subjective intent to defraud the PTO. Um, and, uh, the only evidence in the record is that, uh, is that when the, when the representations were made to the PTO that they understood the term use in commerce to mean used in sale or advertising. And if you actually look at, um, the office action that, uh, my friend referenced, which is at, uh, 18-4 at 100, um, the office action simply asked, uh, for, um, an example or a specimen of pay cargo that is, quote, used in sale or advertising. Um, and so all, uh, pay cargo did in response to that was, and, and, and one of the examples they said you could use is a website. Um, so when pay cargo's response, which is at 18-4 at 71, um, they supplied examples of its website that was in use and its, uh, and its, and its promotional materials that was advertising its use. So exactly what, uh, the patent and trademark office asked for. So, you know, our, our position would be there wasn't even a mistake, uh, a fact there at most there was a mistake in law. And of course the mistake in law only got clarified seven years later in the federal circuit's decision, which clarified what, uh, use in commerce means. Um. Other circuits though had come out that way, hadn't they? Um, I think they have, although we, we cited a case from this circuit, which suggested that, uh, use in commerce can just mean advertising and putting it out to the public. And that's clearly how, um, pay cargo understood the term to mean. Um, and that's especially given the instructions on the, uh, the office action in December 2007. It certainly seems consistent that if you use it in advertising that that's sufficient. Um, on the standing issue, um, I know we only got to the, uh, non-proton, uh, issue before your honors. Um, but it's clear the plain language of that agreement is to give these trademarks to pay cargo LLC. That agreement has absolutely no other purpose, but to do that. It's a one page document, which is very clear. It, it identifies the trademarks and says, we're making sure that Coheway is giving those to pay cargo. Um, and, um, there's just not any evidence in the record that anyone understood that assignment to be anything else. Recital does intimate, I think you even concede that it does intimate that this had preexisted, but we're sort of doing this anyway. Um, does that not create at least some issue, um, whether you call it an ambiguity or not, but some issue of fact, uh, on the, on the ownership issue? Um, I, I would argue it does not, uh, because of the law that you cited your honor, that a recital can't contradict the plain language of the agreement and the, and the clear intent of the parties. Um, but if you look at that language in the recital, what it says is that these, the transactions contemplated by the LLC, it doesn't say it actually was affected by the LLC agreement and it's, you know, it wouldn't make any sense to create a new entity called pay cargo and retain the name pay car, pay, pay cargo within Cohee way. Um, and, uh, and if you actually read the assignment language and, and the various definitions, it's not like the, um, the LLC agreement defined these trademarks and said, these trademarks roof remain with Cohee way. Um, and, and in fact, under the defined term, uh, pay cargo intellectual property in the LLC agreement, um, it, it suggests that, that if there's anything that's pay cargo intellectual property, it would make sense that the name pay cargo is pay cargo intellectual property. But the LLC agreement seems pretty clear. You're right. It doesn't identify the marks themselves, but it seems pretty clear of this is what's theirs and anything not theirs retains as our intellectual property or our property. Yeah. Yeah. And so, and so it, if, if all we had was the LLC agreement, then there might be ambiguity, but that's why the assignment was made to, to resolve any ambiguity, make clear what  and they were using that, um, they were using that mark was we gave this to pay, pay cargo. I know we didn't address it with your, your opposing counsel, but if you could, the third mark, the issue with the third mark. Right. Um, so is it not again, at least for genuine issue of material, cause that's what we're talking about here is just, is there evidence, is there not evidence to suggest that at another party own this, own the third mark where that entity was listed on the application as being the owner of the third mark? Um, no, your honor, cause there, there actually is no evidence in the record that there is a Florida LLC called pay cargo, right there, there, all that, all the, that is there, uh, is that a, uh, I'm sorry, a Florida corporation called pay cargo LLC because the, the, uh, application says, um, the, the identification of the applicant is pay cargo LLC, a Florida corporation. Would there have to be such evidence? In other words, if, if all I'm doing is trying to say, to question whether you, you being your client owned the mark, would not the fact that another entity registered it be indication that you don't own the mark, whether that entity in fact existed at the end of the day or not? Well, this court in Commodore's entertainment court said that, um, you can have an examiner's amendment that, uh, that, that corrects it or, or, or a misidentification is not sufficient to. The Scrivener error there in Commodore's was very, very minute. I mean, it was an S at the end of the name. Um, it wasn't a different corporate entity, right? Well, all the only, uh, Scrivener's error here was Florida in place of Delaware, right? So, so just because you identified the wrong state in the application and then it got corrected before the registration was even issued, then the registration is issued. Um, then I, I don't see how there is a real strong argument or even a sufficient issue of fact. I'm not sure what, what the issue of fact is, right? The, if anything, this is a legal issue. What's the legal effect of, uh, of, of that Scrivener's error, um, on the, the, the legal implication of, of ownership. Um, and so, so, so I don't think that there would be a dispute of fact, even if you found that there was a dispute of fact as to 69, again, we have three, uh, 15 and one, one, two, which are all sufficient. And we also have the unfair, uh, competition claim, which doesn't require a registration. It simply requires a prior use and, um, and, and the validity of the mark. And there's no dispute that, that, that that's sufficient to sustain the damages in this case. Um, and I'd also point out that that mark has become 69 has become incontestable. So it's not identified as a grounds to contest a mark that, that there's some defect in the application process. That's not listed as a, uh, as a ground under, uh, 1064. They would have to win on fraud in order to even get to the ownership issue. I think so. Yeah. And I, and, and there's just no evidence that anyone, um, understood the examiner's amendment to not have any effect, right? I mean, the, the whole point of an examiner's amendment is the people who are most knowledgeable about the patent and trademark office, the people who work there said, oh, I think, you know, this was incorrect. Um, so we're just going to change Florida to Delaware. Um, and so, and, and, and the point I was making before about whether there was an actual entity, I believe if you go to, this is in the record, but if you go to Sunbiz, there is a Florida LLC called pay cargo LLC, um, but it's a, an LLC, not a corporation. There's difference, obviously Inc versus LLC. Uh, but, but, but the, I think the point that, uh, the other side was making was that fine. Like, let's say you have, um, if, if there was pay cargo LLC and you called it a Minnesota corporation, fine, you can correct that under the patent and trademark office rules because there is no such thing as a Minnesota corporation. But if there's an actual Florida corporation, you can't correct it. Um, and I think for that argument to hold there, it actually have to be, it would have to be in the name of an actual entity. And there's no evidence that, that an actual LLC in Florida, uh, sorry, then actual Florida corporation, which is what it was called in the application, uh, exists. Um, and in any event, um, you know, the, the examiner's amendment we think takes care of it. Um, Back to the genericism real fast. Yes. So in, in the reply brief, your opposing counsel points out some examples that have been found to be generic, uh, to that, that, that he cites specifically are a turbo diesel and gas badge. Uh, we're both found to be generic. Um, I have to say those seem kind of close to what we're talking about here. Um, you know, is, is it that those cases are, are sort of irrelevant now after booking.com? Is it that this is so different than those? What, how do we, how do we distinguish those patent cases from what we have here? Absolutely. There's those, and also the screen wipe case. Those are all cases from the federal circuit. Um, I think one point is that booking.com made clear this distinction between descriptive and generic, um, and it's, and, uh, those cases, you know, we're, we're from an earlier time where that line may, may not have been as clear. Um, another point is that this court has never, uh, cited, um, or, or, or relied on, on those cases to hold genericism. Um, I believe the, uh, turbo diesel case was actually cited in dissent in the Citibank case, uh, from this court in 1984, suggesting that turbo diesel actually probably would not be consistent with this circuit's precedent. Um, I believe ABCOR was cited, um, which is the, uh, gas badge case in the Vision Center case, um, from this, uh, from the former Fifth, Fifth Circuit, um, but, um, but that case actually held that Vision Center was descriptive, not generic, um, and the difference in each of those cases is not just the combination of words, because yes, you have that there, but it's, it's, it's that in each case, um, the court found that that combination of words actually named a product. So a screen wipe, you can go out and it meets the Justice Ginsburg's test. You could say, what's your favorite screen wipe? Can I have a screen wipe? Can I have a gas badge as, as something that monitors gas? Uh, and then in turbo diesel, actually, um, there was additional evidence that held, uh, that they found in the record, uh, of turbo diesel being used to name a class of engines. Um, they, they found in the press that we think this is going to be called the turbo diesel engine. Um, and so there's no evidence like that in this record. So, so, so yes, you can look at examples, uh, of various words that, that, that may be combined, but the question is what's in the record that proves that consumers or the relevant public actually understand that term to mean and to name a class of services. And there's not any of that in this record, uh, that actually anyone in the world understands if you were to, if I were to just go out and to a relevant, uh, person in, in, in the industry and say, I need to pay cargo, what would they say? Well, I don't know what you mean. You're, you're missing words there for me to understand what that means. It's different than can I have a Kleenex? Exactly. A Kleenex would, would mean something different to people, but, but you need some evidence in the record. And that's what booking.com tells us is that you can't just rely on the words, you have to see what's in the record and there's no evidence in the record here that would support that. Um, so, um, unless the court has any additional questions. Oh, I'm sorry. And the, uh, the gas badge case, actually, uh, the majority opinion in that case found it to be descriptive. The only, the concurring opinion found it to be generic. Thank you, Your Honor. We urge affirmance. Thank you, counsel. Mr. Rashkind, you've reserved some time for rebuttal. Thank you, Your Honor. Just to address the last point, uh, I think there's a distinction here between, um, a product and a service. One might ask for a Kleenex. One might ask for, um, uh, a booking, uh, but nobody's going to ask for a plumbing services. But plumbing services is, would be generic for plumbing services. Um, in this case, uh, both entities pay cargo fees for their customers. So it, it's similar, it's similar to asking for a plumbing services. It doesn't exactly line up. It's not semantically the same as asking for a booking or asking for a Kleenex, uh, but that doesn't mean that the, uh, the mark cannot be generic. Um, but I want to also, uh, just sort of bring back to the forefront that this is, this was decided at summary judgment. And so we were asking that the court, that this court and the lower court find that, uh, pay cargo is generic as a matter of law. But at the very least, if not just the dictionary definitions, um, the patent registration where pay cargo uses the phrase pay for cargo, um, that in addition to the dictionary definitions should at least be enough that if, if this court does not agree the mark is generic as a matter of law, it should have been an issue for trial. Um, so we're asking the court to consider that. And a lot of these points, um, Judge Luck, you also, you addressed, uh, before I had a chance to, um, but, uh, as to the third mark, um, one of the questions is, uh, that was raised was if you, if you couldn't, I believe was if, if you didn't find fraud, uh, could you find that the change that was made as to the entity from the Florida entity to the- Because it's incontestable at this point, as I understand it, there are some limited statutory bases and, and one of them is fraud and that's one that you brought. But outside of that, I think ownership may not be one of them. Is that, is that the issue? Um, what, what the case, what the cases say, um, and actually it's 37 CFR 2.71D, is that an application that is filed in the name of the wrong party, uh, is void ab initio. And so, uh, if, if the, the correct entity filed it, the Florida entity, and then never assigned it to the Delaware entity, I don't know that there's necessarily evidence of that, but if in fact there was a Florida entity, and there was, called PayCargo, um, and that was not the correct owner at the time of the filing, then, then the application would be void, void ab initio. Um, so that's, that's the reason for the basis why we're asking the court to declare that it's invalid. Um, just a point, uh, that my friend on the other side, uh, said that if at the time of it wouldn't make any sense for Coahuila to retain the rights to the, the, uh, the PayCargo trademark, uh, when in fact there was a PayCargo entity in existence. Um, but that's, that's precisely what the agreement did, and it would not be uncommon in a, in a trademark scenario for a separate entity to retain ownership rights in, in a trademark and then license the rights out to other people. There's no indication that was done here. There's no, there was no assignment, and there was no license agreement either, uh, but it would not be out of the ordinary to have an entity retain IP rights, then license them out to, to a third party. Um, if the court has no other questions, I would, uh, stand on my briefs. Thank you, counsel. Thank you. Thank you. The court, the court will be in recess until nine o'clock tomorrow morning.